## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS and KEN PAXTON, in his official capacity at Attorney General of Texas,<br>*Plaintiffs*,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States; KRISTEN CLARKE, in her official capacity as Assistant Attorney General for the Civil Rights Division; XOCHITL HINOJOSA, in her official capacity as Director of the Office of Public Affairs of the Department of Justice; DEPARTMENT OF JUSTICE; ROB SHIVER, in his official capacity as Acting Director of the Office of Personnel Management, and OFFICE OF PERSONNEL MANAGEMENT,<br>*Defendants*. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:24-CV-237 |

---

## BRIEF IN SUPPORT OF EMERGENCY MOTION
## FOR TEMPORARY RESTRAINING ORDER

---

The Department of Justice is set to attempt to regulate elections in Texas by sending monitors to polling locations in eight Texas counties without authority. *See* Doc. 1-1, DOJ Press Release 24-1381, at 1–4. It is the State of Texas, however, that has default "power to regulate elections," a power that absent clear preemption, the States "keep for themselves." *Shelby Cnty., Ala. v. Holder*, 570, U.S. 529, 543 (2013). For security reasons, Texas limits who can be present in a polling location and at central counting station, and DOJ's identified officials do not satisfy the criteria for admission into either under Texas law. *See* Tex. Elec. Code §§ 61.001(a), 127.008. To prevail, DOJ thus must identify specific statutory authority clearly preempting Texas law. It has done no such thing.

Instead, DOJ has merely gestured at the fact that it can bring enforcement proceedings under a variety of federal voting laws. But authority to bring an enforcement action is not authority to install poll observers. DOJ notably refuses to identify anything specifically giving it *that* authority. For good reason. There *are* statutes on the books that expressly provide DOJ with authority to install poll observers in state voting locations, but one of those statutes has been declared unconstitutional, 52 U.S.C. § 10303, and the other requires authorization by a court following the filing of an enforcement proceeding, § 10302, conditions which have not occurred.

Nevertheless, DOJ seeks to intervene, without authority, into the way Texas conducts elections. Plaintiffs therefore ask the Court to temporarily restrain federal authorities from entering voting locations and central count stations in Texas in the 2024 election.

## I.   Legal Standard for Granting a Temporary Restraining Order

To prevail on its application for temporary restraining order, Texas, as the moving party, must make a showing similar to the one required to obtain a preliminary injunction: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest." *Leija v. Kickapoo Traditional Tribe of Texas*, No. DR-18-cv-043, 2018 WL 7255430, at *6 (W.D. Tex. Sept. 14, 2018) (Moses, J.).

"None of [these] four prerequisites has a fixed quantitative value." *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975). Instead, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* (citation omitted). Ultimately, whether to grant a request for a temporary restraining order "is left to the sound discretion" of the Court. *Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020).

## II.  Argument

### A.      Plaintiffs have standing.

Plaintiffs have standing because Defendants' actions, if permitted to proceed, would violate Texas law. To secure polling locations, Texas law prohibits any person from entering a voting

location or central count station unless that person falls into one of several categories, such as an election judge or clerk, voters, individuals providing assistance to voters, a minor accompanying an adult in the process of voting, and peace officers appointed by a presiding judge. Tex. Elec. Code § 61.001(a). In addition, Texas election law prohibits unauthorized bystanders from being present in a central counting station while ballots are being tallied. A person may be lawfully present in only if that person is involved in the tabulation, a poll watcher, a state inspector, a voting system technician, and the county election officer. *Id.* at § 127.008(b)(1).

Texas has standing to vindicate its sovereign interest in its "power to create and enforce a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). "[S]tates may have standing based on (1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law." *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015), aff'd by an equally divided Court, 579 U.S. 547 (2016). Defendants' attempt to violate Texas law without any clear federal authority infringes that sovereign interest and confers standing.

## B. Plaintiffs are likely to establish that Defendants lack authority to monitor voting in Texas in the 2024 election and to place staff a voting locations and central count stations.

Texas is likely to prevail on the merits because Defendants have not cited (because they cannot) any authority permitting them to preempt Texas law by monitoring the election in Texas or by placing staff at voting locations or central count stations. To determine if an agency has acted in excess of its authority, "[t]he question for a reviewing court is whether in doing so the agency has acted reasonably and thus has 'stayed within the bounds of its statutory authority.'" *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 315 (2014) (quoting *Arlington v. FCC*, 569 U.S. 290, 297 (2013)). A court may not go searching for statutory authority that could grant an agency authority because courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (internal quotation marks omitted).

Indeed, where Congress means to authorize DOJ to install poll observers, Congress knows how to do so. Congress expressly provided for the use of poll observers in two circumstances: neither of which applies here.

First, federal law authorizes federal observers to "enter and attend at any place for holding an election in such subdivision for the purpose of observing"—but that is limited to when "a court has authorized the appointment of observers under section 10302(a)." 52 U.S.C. § 10305. Defendants do not identify any court that has authorized appointment of observers, which makes sense because a court can do so only after "the Attorney General or an aggrieved person institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." § 10302. Defendants identify no enforcement proceeding that has been instituted. Defendants thus cannot rely on this authority.

Second, federal law authorizes federal observers when "the Attorney General certifies" that "the assignment of observers is otherwise necessary to enforce the guarantees of the 14th or 15th amendment." § 10305(a)(2). The problem is twofold: the Attorney General has not made any such certification, and since the Supreme Court's decision in *Shelby Cnty., Ala. v. Holder*, 570, U.S. 529 (2013), he *cannot* make a certification. The statute says he can only make a certification "with respect to any political subdivision named in, or included within the scope of, determinations made section 10303(b)." *Id.* Section 10303, however, is the coverage formula that the Supreme Court struck down as unconstitutional in *Shelby County*. That coverage formula "can no longer be used as a basis for subjecting jurisdictions" to federal observers. *Shelby Cnty.*, 570 U.S. at 557. That is because "[t]he formula captures States by reference to literacy tests and low voter registration and turnout in the 1960s and early 1970s. But such tests have been banned nationwide for over 40 years," now 50 years. *Id.* at 551.

Thus, Congress has created only limited circumstances where DOJ can install poll observers without a State's consent. But none of those circumstances applies. So Defendants—without

citing anything specifically—tries to assert unbounded general authority to install poll observers. Defendants have no authority to do so. Plaintiffs are likely to succeed on the merits.

### C.    Without a TRO, Plaintiffs will suffer irreparable harm.

Texas, as a sovereign entity, "has an intrinsic right to enact, interpret, and enforce its own laws." *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015). This includes a right to "reassert the control of the state" and "enforce existing policy" as declared by the Texas Legislature. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Injuries to this right are sufficient to both create standing to sue and show irreparable harm. *See, e.g., Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020); *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019); *Texas Ass'n of Bus. v. City of Austin, Texas*, 565 S.W.3d 425, 441 (Tex. App.—Austin 2018, pet. denied).

### D.    The balance of equities and the public interest favor Plaintiffs.

The balance of equities and the public interest weigh in favor of Plaintiffs because Texas already has robust election laws to protect voters, and Defendants have identified no specific voting problems in Texas. Texas has an interest in protecting voters and polling locations, and accordingly has enacted statutes prescribing who may be admitted to voting places and central count stations. Additional persons not permitted by Texas law to be present may cause confusion and disruption. Poll workers have not previously been expecting the appearance of these individuals and have not been trained for these new circumstances. And active questioning by federal poll observers will divert the attention of poll workers.

In this case, where Defendants have no authority for their proposed actions and have not identified any equitable reason to set aside Texas law, the balance of equities and the public interest favor Plaintiffs.

Date: November 4, 2024

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

RYAN D WALTERS
Chief, Special Litigation Division

Respectfully submitted,

*/s/Ryan G. Kercher*
RYAN G. KERCHER
Deputy Chief, Special Litigation Division
Texas State Bar No. 24060998

KATHLEEN T. HUNKER
Special Counsel
Texas State Bar No. 24118415

WILLIAM D. WASSDORF
Assistant Attorney General
General Litigation Division
Texas State Bar No. 24103022

MARK CSOROS
Assistant Attorney General
Texas State Bar No. 24142814

OFFICE OF THE TEXAS ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.wassdorf@oag.texas.gov

COUNSEL FOR PLAINTIFFS